UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KIMBERLY BADY AND JASON D. ARCHER--TRUSTEE § § § Plaintiffs, § § v. § § JPMORGAN CHASE BANK, N.A. § § Defendant. § | CIVIL ACTION NO. 4:17-cv-01019 |

### DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND BRIEF IN SUPPORT

Defendant JPMorgan Chase Bank, N.A. (JPMC) files its Motion to Dismiss Plaintiffs' Amended Complaint and Brief in Support, and would respectfully show as follows:

### I.
### NATURE AND STAGE OF THE PROCEEDING

On February 27, 2017, Plaintiffs Kimberly Bady and Jason D. Archer, Trustee (Plaintiffs) filed Plaintiffs' Original Petition, Application for Injunctive Relief and Request for Disclosures (the Complaint) in state court solely for the purposes of delaying the March 7, 2017 foreclosure sale of the real property located at 25634 Saddlebrook Village Dr., Tomball, TX 77375 (the Property). In April, JPMC timely removed the suit to this Court and filed a motion to dismiss. Doc. 1, 5.

At a status conference on May 19, the Court heard argument on the motion to dismiss. The Court ordered JPMC to produce communications between JPMC and Bady from October 2016 to the present regarding a loan modification. The Court further warned that in the absence

of a written document agreeing to postpone the foreclosure sale, the Court would likely grant JPMC's motion to dismiss based on the application of the statute of frauds. At the time, the parties were also considering a settlement. As a result, the Court set a status conference for July and required that the discovery be produced prior to that conference. After the settlement discussions reached an impasse, JPMC produced the discovery materials required by the Court on June 14, 2017 and requested that Plaintiffs voluntarily dismiss in light of information contained in the discovery indicating that JPMC had voluntarily agreed to postpone the March foreclosure and notified Plaintiffs' representative of that decision in February, prior to the filing of the suit. Plaintiffs refused to voluntarily dismiss and instead filed Plaintiffs' First Amended Complaint (Doc. 14) on July 14.

Plaintiff Kimberly Bady is the borrower under the subject loan and the former owner of the Property. Doc. 14, ¶5, 16. Bady previously obtained two modifications of the subject loan. Doc. 14, ¶ 8-9. In October 2016, Bady was in contact with JPMC about applying for a short sale of the property. Doc. 14-8. In November 2016, JPMC followed up regarding additional information that was needed to complete Bady's application so that JPMC could consider the short sale request. Doc. 14-9. In December 2016, JPMC, through its foreclosure counsel, accelerated the balance owed on the loan and gave notice of its intent to foreclose on March 7, 2017. Doc. 14-10, 14-11. In January 2017, Bady was continuing to submit materials to support her request for a short sale. Doc. 14-12. Again on February 13, 2017, JPMC issued a letter following up regarding additional materials that were needed to complete the application for a short sale. Doc. 14-13. On February 28, 2017, after Plaintiffs filed this suit, JPMC sent a letter to Bady indicating that she was eligible for a short sale program and advising her of the next steps. Doc. 14-15. The letter advised that "if we've started a legal foreclosure proceeding on the

property, we need to receive your purchase contract with your listing agreement. All borrowers must sign the listing agreement and we need to receive all documents by March 14, 2017." *Id.* at pg. 4 of 15. Plaintiffs allege this letter caused confusion because it also offered a loan modification. Doc. 14, ¶17. However, the letter, which is attached to the Amended Complaint, made no offer regarding a loan modification. Doc. 14-15. Plaintiff contends that throughout the short sale process she was orally told that no action would be taken to foreclose on her home while the short sale option was being explored. Doc. 14, ¶ 15. Plaintiff also alleges that she requested a reinstatement quote more than five days prior to foreclosure, but that such quote was not received. Doc. 14, ¶ 18. The foreclosure sale scheduled for March 7, 2017 did not proceed.

In January 2017, while her short sale request was under consideration, Bady conveyed the property to Saddlebrook Village Trust, Jason D. Archer as Trustee. Doc. 14-14.

Plaintiffs assert claims for breach of contract, fraud, promissory estoppel and violations of the dual tracking provisions of Regulation X. Doc 14, ¶21-27. Plaintiffs' claims are based primarily upon their contention that a JPMC representative represented to Bady that no action would be taken to foreclose while the short sale was under consideration. Plaintiffs assert no viable cause of action or cognizable claim by which they may be entitled to relief. Plaintiffs' claims are all barred by the statute of frauds, among other things. Consequently, Plaintiffs' Complaint should be dismissed in its entirety under Federal Rules of Civil Procedure 8 and 12(b)(6).

## II.
## ISSUES TO BE DECIDED BY THE COURT

1.  Are Plaintiffs' claims for breach of contract, fraud and promissory estoppel barred by the statute of frauds?

2.      Beyond the statute of frauds issue, do Plaintiffs fail to state a breach of contract action where they do not allege (1) Bady's performance, (2) the existence of an enforceable contract, (3) breach by JPMC, and (4) resulting damages as no foreclosure occurred?

3.      Beyond the statute of frauds issue, do Plaintiffs fail to state a fraud cause of action where (1) the allegations regarding fraud do not meet the heightened pleading requirement of Rule 9(b), (2) Plaintiffs fail to allege that JPMC intended not to perform at the time the alleged representation was made, (3) Plaintiffs fail to allege any facts to support that Plaintiffs relied on the alleged representation, and (4) Plaintiffs do not and cannot allege any damages as a result as foreclosure has not occurred?

4.      Beyond the statute of frauds issue, do Plaintiffs fail to state a promissory estoppel claim where they do not allege any facts to demonstrate Plaintiffs' reliance on the alleged oral promise?

5.      Do Plaintiffs state a valid dual tracking claim where there are no allegations to satisfy the triggering of the dual tracking regulation and Plaintiffs do not allege any damages as a result of alleged dual tracking?

6.      Does Plaintiffs' claim for injunctive relief fail where it is not support by any viable cause of action?

## III.
## ARGUMENT AND AUTHORITIES

**A.    Standard for dismissal under Rule 12(b)(6).**

To survive a motion to dismiss based on Rule 12(b)(6), a plaintiff must plead sufficient facts to state "a legally cognizable claim that is plausible." *Lone Star Fund V (U.S.), L.P. v. Barclay's Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The pleading standard set forth by the United States Supreme Court does not "require 'detailed factual allegations,' but it demands

more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal citations omitted). While a court must accept all of the plaintiff's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the court can draw a reasonable inference from the pleadings that the defendant is liable for the misconduct alleged." *Id*. at 556. The factual allegations must be sufficient to raise the right to relief above a speculative level. *Lexington Ins. Co. v. S.H.R.M. Catering Servs., Inc.*, 567 F.3d 182, 184 (5th Cir. 2009). "Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief." *Twombly*, 550 U.S. at 557.

In determining the validity of a Rule 12 (b)(6) motion, the pleadings are determinative. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "'attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (*quoting Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

### B.     Plaintiffs' claims are barred by the statute of frauds.

Plaintiffs' claims for breach of contract, fraud and promissory estoppel are premised on an alleged oral promise to delay foreclosure so long as short sale consideration was ongoing. The loan at issue had an original principal balance of $133,394.  Doc. 14, ¶ 5.

In Texas, a loan agreement for more than $50,000 is not enforceable unless it is in writing and signed by the party to be bound. TEX. BUS. & COM. CODE § 26.02(b). Similarly, any agreement modifying such a loan is subject to the same statute of frauds. *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013). "An agreement regarding the transfer of the property or modification of a loan must therefore be in writing to be valid." *Id.* Likewise, "[a]n agreement to delay foreclosure is subject to the Texas statute of frauds, and, accordingly, must be in writing to be enforceable." *Milton v. U.S. Bank Nat. Ass'n*, 508 Fed. Appx. 326, 328–29 (5th Cir. 2013); *see also Williams v. Wells Fargo Bank, N.A.*, 560 Fed. Appx. 233, 241 (5th Cir. 2014) (finding that the statute of frauds precluded claims based on an oral promise not to foreclosure while a loan modification was under consideration); *Hua v. Wells Fargo Bank, N.A.*, No. H-14-2427, 2014 WL 5877909 (S.D. Tex. Nov. 11, 2014) (dismissing breach of contract, fraud and promissory estoppel claims asserted by Plaintiffs' counsel).  These cases demonstrate that the alleged promise to delay foreclosure is not treated as a separate contract or agreement and instead is treated as a modification of the loan agreement.

The application of the statute of frauds is not limited to breach of contract claims and instead will also bar fraud and promissory estoppel claims under the allegations asserted by Plaintiffs. "Where a contract claim (as here) is barred by the statute of frauds, an alternative claim of promissory estoppel requires the plaintiff to show not only that the defendant made a promise upon which he relied, but also that the defendant promised to sign a written document

complying with the statute of frauds." *Guajardo v. JP Morgan Chase Bank, N.A.*, 605 Fed. Appx. 240, 248-49 (5th Cir. 2015). Thus, in order for a claim for promissory estoppel to avoid the impact of the statute of frauds, "there must have been a promise to sign a written contract which had been prepared and which would satisfy the requirements of the statute of frauds." *Martins*, 722 F.3d at 256–57 (5th Cir. 2013). This requires a separate promise from the original promise to postpone the foreclosure. *Id.* In addition, tort claims like fraud cannot be used to circumvent the statute of frauds. "When tort claims have their nucleus in an alleged oral contract which is unenforceable under the statute of frauds, the statute of frauds bars the tort claims as well." *Foster v. Bank One Texas* NA, 54 Fed. Appx. 592, *3 (5th Cir. 2002) (quoting *Maginn v. Norwest Mortg. Inc.*, 919 S.W.2d 164, 169 (Tex. App.—Austin 1996, no writ); *see also Hua*, 2014 WL 5877909 at *2 (dismissing fraud claim based on unenforceable promise to delay foreclosure).

Here, Plaintiffs' claims for breach of contract, fraud and promissory estoppel are all premised on an alleged oral promise to delay foreclosure while a short sale was being considered. Plaintiffs do not allege that JPMC signed a written agreement to postpone foreclosure. In addition, Plaintiffs do not alleged that JPMC promised to sign a prepared document agreeing to delay foreclosure that comports with the statute of frauds. As a result, all of Plaintiffs' claims premised on an alleged oral promise to delay foreclosure, including their claims for breach of contract, fraud and promissory estoppel, are barred by the statute of frauds.

**C.    Even if the statute of frauds did not apply, Plaintiffs' breach of contract claim fails as a matter of law.**

Under Texas law, a plaintiff alleging a breach of contract must show (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Villarreal*

*v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. Feb. 26, 2016). "A plaintiff must allege her own performance, because 'a party to a contract who is [herself] in default cannot maintain a suit for its breach.'" *Id.*

Here, there is no allegation that Bady herself was not in breach of the loan agreements. Instead, the allegations are that she sustained financial difficulties and could no longer afford the loan. Under similar circumstances, the Fifth Circuit has affirmed dismissal of breach of contract claims. *Villarreal*, 814 F.3d at 767 (affirming dismissal of breach of contract claim where borrower under loan was herself in default of the loan because she failed to make all payments as they became due). In addition, under the terms of the Deed of Trust, Bady is in default upon her sale of the property to a third party. Doc 14-2, ¶ 9. Bady admits selling the property to a third party in January. Doc. 14-14. That breach separate and apart from the payment default would also undermine any possibility of modifying the loan or entering into a short sale, as Bady no longer owns the property.

In addition, there is no allegation that there was a valid, existing contract to postpone foreclosure. The alleged promise to delay foreclosure was not supported by separate consideration.

As pleaded, there also is no allegation of breach by JPMC or damages sustained by Plaintiffs. The alleged promise was that JPMC would not foreclose. Because JPMC has not foreclosed, there is no breach of that alleged promise. Moreover, because no foreclosure has occurred, Plaintiffs have not sustained damages as a result of the alleged breach.

To the extent Bady premises a breach of contract claim on the alleged failure to provide a reinstatement quote when it was requested, Bady cannot prevail because she was herself in breach of the Note and Deed of Trust. In addition, Bady has not alleged how the failure to

receive a reinstatement quote caused her damage. The foreclosure sale did not occur so any delay in receiving a reinstatement quote, especially after she had conveyed her interest in the property, cannot have caused her damage.

For all of these reasons, and because of the application of the statute of frauds as discussed above, Plaintiffs' breach of contract claim should be dismissed with prejudice.

D.     **Even if the statute of frauds did not apply, Plaintiffs fail to state a viable fraud claim.**

The elements of common-law fraud are (1) the defendant made a material representation to the plaintiff; (2) the representation was false; (3) the defendant knew the representation was false or made the misrepresentation recklessly, without knowledge of the truth; (4) the defendant intended for the plaintiff to act on the misrepresentation; (5) the plaintiff acted on the misrepresentation; and (6) the plaintiff incurred damages. *In re First Merit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). If the representation pertains to future performance, the plaintiff must also establish that the promise was made with no intention of performing at the time it was made. *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998).

The representation here was a representation about future performance—that JPMC allegedly would take no action to foreclose while Bady was actively pursuing a short sale. Doc. 14, ¶23. However, there is no allegation that this alleged promise was made by a JPMC representative with no intention of performing at the time the promise was made. Doc. 14, ¶15, 23. There are not even boilerplate allegations in this regard, let alone specific factual allegations to support a boilerplate allegation.

A common law fraud claim must satisfy a heightened pleading standard, which Plaintiffs' Amended Complaint utterly fails to meet. *See* FED. R. CIV. P. 9 (b); *Benchmark Elecs., Inc. v.*

*J.W. Huber Corp.,* 343 F.3d 719, 724 (5th Cir. 2003); *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). To sufficiently plead a fraud claim, Plaintiffs must specify the time, place, and content of the misrepresentation, as well as the identity of the speaker and what benefit the speaker gained from the misrepresentation. *Williams*, 112 F.3d at 177-78.

Here, Plaintiffs do not identify a single misrepresentation they allege JPMC made with the specificity demanded by Rule 9(b). Instead, Plaintiffs allege that "Sheri Schwartz at Chase Bank . . . repeatedly assured her that Chase Bank would take no action to foreclose on her home while they were actively pursuing the short sale option." Doc. 14, ¶15. While Plaintiffs now identify the speaker, they fail to explain when this representation was made and what benefit JPMC gained by telling Plaintiffs that the foreclosure would be postponed. In addition, there are no allegations that the representation was false when made or that JPMC intended not to perform when the alleged representation was made.

Likewise, Plaintiffs' Amended Complaint is devoid of any fact that would show Plaintiffs relied on any false representation. Doc. 14, ¶23. The bare assertion that "Bady relied on these representations" is insufficient. *Iqbal*, 556 U.S. at 678. Plaintiffs do not allege that Bady could have brought the loan current to prevent the foreclosure. Even if this vague statement occurred, Plaintiffs cannot allege or show reliance. Moreover, because the foreclosure sale did not occur, Plaintiffs cannot allege that they sustained damage as a result of the alleged fraud.

Plaintiffs fail to allege facts sufficient to satisfy the basic elements of a fraud claim, let alone the pleading requirements of Rule 9(b). Plaintiffs' fraud claim should be dismissed.

### E. Even if the statute of frauds did not apply, Plaintiffs fail to state a viable promissory estoppel claim.

A cause of action for promissory estoppel requires: (1) a promise by the defendant; (2) foreseeable and actual reliance on the promise by the plaintiff to her detriment; and (3) that

enforcement of the promise be necessary to avoid an injustice. *Guajardo v. JP Morgan Chase Bank, N.A.*, 605 Fed. Appx. 240, 248 (5th Cir. 2015). "To support a finding of promissory estoppel, the asserted promise must be sufficiently specific and definite that it would be reasonable and justified for the promisee to rely upon it as a commitment to future action." *Id.*

Likewise, Plaintiffs' Amended Complaint is devoid of any fact that would show they relied on any alleged promise to her detriment. The bare assertion that "Bady reasonably and substantially relied on the promise to her detriment" is insufficient. *Iqbal*, 556 U.S. at 678. Plaintiffs do not allege that Bady could have brought the loan current to prevent the foreclosure. Even if this vague statement occurred, Plaintiffs cannot allege or show reliance. Plaintiffs were aware since December that the foreclosure was scheduled for March 7.  Apparently at the time suit was filed on February 27, 2017, Plaintiffs believed the foreclosure was still moving forward. That negates any reliance that could possibly have been placed on the earlier alleged statement that foreclosure would not move forward. Accordingly, Plaintiffs have not stated a claim for promissory estoppel.

F.     **Plaintiffs fail to state a claim for dual tracking.**

Plaintiff asserts a claim based on JPMC's alleged "dual tracking" of her loss mitigation application and foreclosure.  Doc. 14, ¶26-27.  However, there are no allegations to support a claim that the actual statutory provisions regarding dual tracking have been violated. Specifically, a loan servicer is prohibited from making the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process if the borrower submits a "complete loss mitigation application" during the 120–day pre-foreclosure review period or before the servicer has made the first notice or filing. 12 C.F.R. § 1024.41(f). Subsection (g) further provides that if a borrower submits a "complete loss mitigation application" after the servicer has made the first notice or filing "but more than 37 days before a foreclosure sale, a

**DEFENDANT JPMORGAN CHASE BANK, N.A'S MOTION TO
DISMISS PLAINTIFFS' AMENDED COMPLAINT AND BRIEF IN SUPPORT**                                                                                                   **Page 11**

servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless: (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied...." *Id*. § 1024.41(g). The ensuing subsection qualifies that "[a] servicer is only required to comply with the requirements of this section for a single completed loss mitigation application for a borrower's mortgage loan account." *Id*. § 1024.41(i).

Plaintiff Bady has failed to allege that she submitted a "complete loss mitigation application." Indeed, from the correspondence attached to Plaintiffs' Amended Complaint, it is clear that when Chase issued the foreclosure notice in December 2016, a complete short sale application had not yet been submitted to Chase. In the absence of a completed loss mitigation application in December 2016, Chase did not violate the dual tracking provision by noticing the sale for March 7, 2017. Accordingly, Plaintiffs cannot state a claim against Chase for dual tracking.

In addition, to the extent there are allegations that a completed short sale application was submitted more than 37 days prior to the March 7 foreclosure date, and it appears a complete application was not submitted prior to February 1, 2017 as materials were still being sought in mid-February (Doc. 14-13), Chase's obligation under Reg. X was not to conduct the foreclosure sale. No foreclosure sale went forward on March 7, 2017. Accordingly, Chase did not violate Reg. X., even assuming there are allegations that a completed loss mitigation application was submitted prior to February 1, 2017. As a result, Plaintiffs have failed to state a claim for dual tracking.

In addition, in order to state a claim for dual tracking, which can be a violation of RESPA, a plaintiff must plausibly alleged that he or she has sustained actual damages as a result of the alleged dual tracking violation. *Obazee v. Bank of N.Y. Mellon,* No. 3:15–CV–1082–D, 2015 WL 4602971, at *4 (N.D. Tex. July 31, 2015). Here, Plaintiffs has not alleged how the alleged dual tracking violation caused them actual damages. It is difficult to see how damages could have been caused where the borrower no longer owned the property and the foreclosure sale did not occur. As a result, Plaintiffs have failed to state a claim premised on the alleged dual tracking.

## IV.
## CONCLUSION

Defendant prays that the Court dismiss all causes of action asserted against it because Plaintiffs do not state a single cause of action upon which relief may be granted.

Respectfully submitted,

  */s/ Marcie L. Schout*
WM. LANCE LEWIS, Attorney-in-Charge
Texas Bar No. 12314560
S.D. Bar No. 28635
MARCIE L. SCHOUT, of counsel
Texas Bar No. 24027960
S.D. Bar No. 34593
**QUILLING, SELANDER, LOWNDS,
    WINSLETT & MOSER, P.C.**, of counsel
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)
llewis@qslwm.com
mschout@qslwm.com

**ATTORNEYS FOR DEFENDANT
JPMORGAN CHASE BANK, N.A.**

**CERTIFICATE OF SERVICE**

      This is to certify that on July 18, 2017 a true and correct copy of the foregoing pleading has been furnished to Plaintiffs' counsel via ECF in accordance with the Federal Rules of Civil Procedure.

    Robert C. Vilt
    Vilt and Associates, P.C.
    5177 Richmond Avenue, Suite 1142
    Houston, Texas 77056

                                                            */s/ Marcie L. Schout*
                                                            Marcie L. Schout